**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **JAMAL JAMES CARMOUCHE** | : | **DOCKET NO. 15-cv-2760** |
| **D.O.C. # 471370** | | |
| | | |
| **VERSUS** | : | **JUDGE DOHERTY** |
| | | |
| **DARREL VANNOY** | : | **MAGISTRATE JUDGE KAY** |

### SUPPLEMENTAL REPORT AND RECOMMENDATION

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254 filed by Jamal James Carmouche ("petitioner"). Doc. 1. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at Dixon Correctional Institute in Jackson, Louisiana. Darrel Vannoy ("respondent"), former warden at Dixon Correctional Institute, opposes the application. Doc. 11.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. We have already issued a Report and Recommendation [doc. 14] recommending that the petition be denied and dismissed with prejudice. In his objections to that filing, the petitioner clarified that his malicious prosecution claim included an allegation that the prosecution committed a *Brady* violation by failing to disclose surveillance footage to the defense. Doc. 18. The district judge therefore referred the matter to us once more for the issuance of a supplemental report and recommendation to deal with that portion of the petitioner's claim. Doc. 19.

# I.
## BACKGROUND

The full background and procedural history of this case can be found in our original report

and recommendation. *See* doc. 14, pp. 1–3. Relevant to this claim, the petitioner complains about

the manner in which the prosecution introduced surveillance footage of him in a homicide trial.

The video in question contained surveillance footage from the date of the shooting, taken

from a utility pole camera near the scene. Doc. 11, att. 6, pp. 65, 72. After the video was played,

defense counsel stated that he had had no objection to the video itself but that, after seeing it

played, he wished to have it excluded as irrelevant:

> But, right now, the only thing that the jury see [*sic*] is just some people
> running. There's nothing associating, obviously, my client with this
> particular video. So we would simply ask that it be excluded, based on its
> relevancy.

*Id.* at 76–77. The court denied the motion noting that the defense had offered no objection to the

video when it was introduced and had now waived his right to object, despite defense counsel's

contention that he only meant that he had no objection to the foundation. *Id.* at 77–78.

# II.
## LEGAL ANALYSIS

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of

evidence favorable to an accused upon request violates due process  where the evidence is material

either to guilt or to punishment, irrespective of the good faith or bad faith of the prosection." 83

S.Ct. 1194, 1196–97 (1963). In order to prevail on such a claim, the petitioner must show 1) that

the evidence at issue was favorable to the accused, either because it was exculpatory or

impeaching; 2) that the evidence was either willfully or inadvertently suppressed by the

prosecution; and 3) that prejudice ensued. *Medellin v. Dretke*, 371 F.3d 270, 280–81 (5th Cir.

2004) (citing *Banks v. Dretke*, 124 S.Ct. 1256, 1272 (2004)).

*Brady*'s prejudice factor is tied to the materiality of the suppressed evidence. *Banks v. Thaler*, 583 F.3d 295, 309–10 (5th Cir. 2009) (citing *Banks v. Dretke*, 124 S.Ct. at 1272)). Thus a petitioner will only be entitled to federal habeas relief if he can show that the suppressed evidence was material. Suppressed evidence is material if there is a "reasonable probability that, had the evidence been disclosed to the defendant, the result of the proceeding would have been different." *Id.* (quoting *Strickler v. Greene*, 119 S.Ct. 1936, 1948 (1999)). This does not mean that the petitioner must show by a preponderance of the evidence that disclosure of the suppressed evidence would have ultimately led to his acquittal. Rather, he must demonstrate that the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."*Sholes v. Cain*, 370 Fed. App'x 531, 533 (5th Cir. 2010) (unpublished) (quoting *Youngblood v. West Virginia*, 126 S.Ct. 2188, 2190 (2006)). A materiality determination is "a fact-intensive inquiry done on a careful, case-by-case basis." *Id.* (quoting *Banks v. Thaler*, 583 F.3d at 322).

The Fifth Circuit has long held that there can be no *Brady* violation if the defendant received the suppressed evidence in time to put it to effective use at trial. *United States v. Martinez,* 151 F.3d 384, 391 (5th Cir. 1998) (citing *United States v. McKinney*, 758 F.2d 1036, 1049–50 (5th Cir. 1985)). When the prosecution is alleged to have delayed in surrendering *Brady* material, the petitioner must show that he was prejudiced by the tardy disclosure. *McKinney*, 758 F.2d at 1050. Accordingly, here the petitioner must show a reasonable probability that, had the defense received the footage earlier, the outcome of the case would have been different.

The surveillance footage, though apparently of poor quality, was used at the petitioner's trial in the examination of eyewitnesses. *See* doc. 14, pp. 10–12. In his original petition, the petitioner only briefly mentioned the video under the *Brady* claim but did not argue how it fit under

the *Brady* factors. Doc. 1, att. 2, p. 23.  However, he did complain about the video's introduction under other claims. Namely, he asserted that the video was insufficiently probative because its quality did not allow one of the witnesses to identify which of the two figures in the footage was him nor could the detective who introduced the footage state whether the figures in the footage were male or female, white or black. *Id.* at 11, 22. He also alleged that his trial counsel was ineffective for failure to object to the video being played before he had reviewed it. *See id.* at 15–16.

In his objections to the original Report and Recommendation the petitioner expands on his belief that the video was suppressed and offers letters from his trial attorney seeking discovery of video evidence in January and September 2011, before the petitioner's January 2012 trial. Doc. 17, att. 1, pp. 3–4.  Petitioner, however, continues to fail to clarify how the video falls within *Brady*. He does not explain how the video qualifies as exculpatory or impeaching evidence and, therefore, has not shown that the evidence was *Brady* material. He also makes no showing of what delay occurred before the video was received by the defense.[1]

Assuming *arguendo* that the video did qualify as *Brady* material and that the prosecution did impermissibly delay production, we still cannot find that the petitioner has met his burden. He does not explain how the video footage might have been put to **better** use at his trial but for the alleged delay. He therefore does not show to what extent, if any, the defense was prejudiced. Accordingly, he has not shown error in the state court's ruling or a right to federal *habeas* relief.

---

[1] Detective Larry Theriot, who introduced the video, testified that there were two dates printed on the envelope containing the flash drive on which the video was stored: September 18, 2010 (the date the footage was taken), and November 11, 2011, reflecting when the envelope had been opened and resealed. Doc. 11, att. 6, pp. 72–73.

## III.
### CONCLUSION

Based on this and the preceding Report and Recommendation, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 5th day of April, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE